J. S06031/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S.V.R., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.B.W., MOTHER | : | No. 3088 EDA 2018 |

Appeal from the Decree Entered September 18, 2018,
in the Court of Common Pleas of Philadelphia County
Family Court Division at No. CP-51-AP-0000242-2018

BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 22, 2019**

L.B.W. ("Mother") appeals from the September 18, 2018 decree entered in the Court of Common Pleas of Philadelphia County, Family Court Division, involuntarily terminating her parental rights to her dependent child, S.S.V.R., male child, born in June of 2004 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).[1]  After careful review, we affirm.

The trial court set forth the following:

> On October 18, 2016, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Mother transported Child to the Germantown Community Crisis Response Center ("CRC").  The GPS report alleged Mother stated that she and Child had a physical altercation and that Mother was unable to control Child's violent behavior towards her and

---

[1] We note that the record reflects that Child's birth certificate does not identify Child's father and that Mother has not been forthcoming in revealing his identity.  (Notes of testimony, 9/18/18 at 79.)

Child's siblings. On October 26, 2018, DHS received a Supplemental Report alleging that in June 2016 Mother beat Child with a stick and belt. On November 16, 2018, DHS received an additional Supplemental Report alleging that Mother contacted Police seeking to remove Child from her home after threatening to kill the Child. On November 23, 2016, DHS interviewed Child who told DHS that he was fearful of Mother and that Mother threatened to kill him. Child also told DHS that Mother made Child wear the same clothes for four consecutive days. DHS obtained an Order for Protective Custody ("OPC") for Child and placed Child with his maternal cousins. Child was adjudicated dependent on December 2, 2016. On November 28, 2017, a revised Single Case Plan ("SCP") was created. The parental objectives for Mother were to (1) participate at the Center for Family Relationships for individual therapy; (2) to participate in mental health treatment; (3) to comply with supervised bi-weekly visitation and (4) maintain suitable housing.

The underlying Petition to Terminate Mother's Parental Rights to Child was filed on March 26, 2018 since Mother failed to meet her SCP objectives.

Trial court opinion, 11/9/18 at 2-3 (record citations omitted).

On September 18, 2018, the court held a hearing on the Petition to Terminate the Parental Rights of [Mother]. Mother was present at the hearing and represented by counsel. Child was present at the hearing and represented by a separate Guardian Ad Litem and Child Advocate. Child testified in camera in chambers and during the hearing. There existed no conflict between the Child's best interest and legal interest as confirmed by testimony during the hearing.

*Id.* at 1.

At the termination hearing, Mr. Andrew Lemon, the assigned CUA Representative, ("Mr. Lemon") testified that Mother's SCP objective[s] were (1) for Mother to

maintain stable housing; (2) to participate in mental health treatment; and (3) to participate in individual therapy[;] and (4) to maintain visitation with the Child. Mr. Lemon testified Mother did not participate in individual treatment despite being advised of her SCP objectives. Mr. Lemon testified Mother did not participate in family therapy despite being advised of her SCP objectives. Mother failed to provide documentation or an explanation as to why she did not participate in individual or family therapy. Mr. Lemon testified that Mother was uncooperative in scheduling home visits. As a result, Mr. Lemon was forced to make unannounced visits to Mother's home to determine if Mother was compliant with her SCP objectives. Ultimately, it was determined that Mother had not been forthright about her actual home address. Mother never inquired of Mr. Lemon about the Child's grades or medical appointments.

In contrast, Mr. Lemon testified that Child's foster parents and Child had an appropriate child parent bond. Both Child and his foster parents wanted Child to be adopted by his foster parents. Mr. Lemon testified that it would be in the Child's best interest that he be adopted and that the termination of Mother's parental rights would not cause Child irreparable harm. Mr. Lemon testified that there was no significant bond between Child and Mother.

Mr. Lemon testified that he observed visitation between Mother and Child and that during these visits Mother was hostile and angry with Child. Mr. Lemon testified that Child had made reasonable efforts to seek to repair his relationship with his Mother but that all efforts had been exhausted. As to visitation, Mr. John Hall, a CUA Representative, also testified that he had witnessed visitation between Child and Mother. During one visit in June 2018, Mother and Child quarreled when Mother called Child a cheater and Mother abruptly terminated the visit. Mr. Hall also testified that Mother was not receiving mental health treatment, which remained an SCP Objective. Mr. Hall testified that Mother often refused to visit the Child. During the termination hearing, Child testified that he

also wanted to be adopted because he wanted to cease living in an environment where he was constantly arguing with his Mother and in fear of being thrown out of the house.

Ms. Teeawanna Burrell, Mother's first cousin and Child's foster parent, testified that Child and Mother did not have a strong parental bond. Ms. Burrell testified that Mother had been verbally abusive to the Child and that Mother hit Child. In addition, Mother consistently demeaned Child. As a result, Child consistently sought to escape Mother's home by living with friends or relatives. Ms. Burrell testified that she wanted to adopt the Child because she loved the Child and wanted Child to fulfill his dreams. Throughout the hearing, Mother's counsel was an active participant who provided adequate counsel. He clearly articulated Mother's arguments and defenses and appropriately cross examined the Child, which was a difficult task under the circumstances.

The testimony of the CUA Representatives, Ms. Burrell and the Child was deemed to be credible and accorded great weight. Based upon the testimony elicited at the Termination Hearing as well as the documents in evidence, the court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1)[,] (2)[,] (5)[, and] (8) as Mother was unable to remedy the conditions that brought the Child into care. Specifically, Mother's visitation was inconsistent and she did not participate in mental health treatment or demonstrate that she could provide stable housing for Child. In addition, the record reflected that Mother was an overbearing parent who was incapable of providing love and support for Child. In contrast, Child's foster parent provided Child with the love, support and an opportunity to thrive. Consequently, the termination of the Mother's parental rights would be in the best interest of the Child pursuant to 23 Pa.C.S.A. § 2511(b).

*Id.* at 5-8 (record citations omitted).

The record reflects that on October 18, 2018, while Mother was still represented by court-appointed counsel Craig B. Sokolow, Esq., Mother filed a ***pro se*** notice of appeal, together with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 6, 2018, the trial court filed its Rule 1925(a) opinion. On November 19, 2018, the trial court granted Attorney Sokolow's motion to withdraw as counsel and appointed Mario D'Adamo, III, Esq., to represent Mother.

On November 26, 2018, this court entered an order directing Attorney D'Adamo to file an amended Rule 1925(b) statement on Mother's behalf no later than December 6, 2018. Attorney D'Adamo timely complied.

Mother raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, L.W. pursuant to 23 Pa.C.S.A. [§§ 2511(a)(1), (2), (5), and (8)] where Mother presented evidence that she has remedied her situation by complying with her [s]ingle [c]ase plan objectives[?]

2. Whether the [t]rial [c]ourt erred in [t]erminating [Mother's] [p]arental [r]ights under 23 Pa.C.S.A. [§] 2511(a)(2), where the evidence has been insufficient to establish Mother caused [C]hild to be without essential parental care, nor could that not have been remedied[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, L.W. pursuant to 23 Pa. C.S.A. [§§] 2511(b) where evidence was presented that established the child had a bond with Mother[?]

Mother's brief at 8.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** The trial court's decision, however, should not be reversed merely because the record would support a different result. ***Id.*** at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***See In re R.J.T.***, 9 A.3d [1179, 1190 (Pa. 2010)].

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as

Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>    . . . .
>
>    (2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> **(b)  Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).  "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."  *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Mother's parental rights, the trial court emphasized that:

> [t]he record demonstrated Mother's ongoing inability to provide care for or control of Child and Mother's failure to remedy the conditions that brought the Child into care.  Specifically, Mother made insufficient and inconsistent efforts to meet her SCP objectives, which included visitation, housing and the participation in mental health treatment.  In addition, the testimony

> of the CUA Representatives and the Mother's own relatives made it abundantly clear that Mother was verbally abusive to Child and that Mother was unable to provide Child with any degree of parental encouragement or support.

Trial court opinion, 11/9/18 at 4.

We conclude that the record supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2). The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. The record also supports the trial court's conclusion that Mother continued to lack capacity to parent Child.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below,

> evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in

a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, 73 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

In determining that termination of Mother's parental rights favored Child's needs and welfare, the trial court concluded that "the record reflected that Mother was an overbearing parent who was incapable of providing the love and support for Child. In contrast, Child's foster parent provided Child with love, support and an opportunity to thrive." (Trial court opinion, 11/9/18 at 8.) We further note that at the termination hearing, Child was 14 years old and expressed his preference to be adopted by his foster mother. (Notes of testimony, 9/18/18 at 57.) Child explained that he wanted to be adopted because "I don't have to go through the arguing and fighting no more. I don't have to worry about being thrown out of the house. I don't have to worry about being beat. I feel safe where I'm at." (***Id.*** at 59.)

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under Sections 2511(a)(2) and (b).

Decree affirmed.


Dubow, J. did not participate in the consideration or decision of this case.



Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/19